UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ABELARDO SAUCEDO, et al.,<br><br>               Plaintiffs,<br><br>   v.<br><br>NW MANAGEMENT AND REALTY SERVICES, INC., et al.,<br><br>               Defendants. | NO:  12-CV-0478-TOR<br><br>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS |

BEFORE THE COURT are two motions to dismiss filed by Defendant Farmland Management Services (ECF No. 12) and Defendants John Hancock Life & Health Insurance Co. and Texas Municipal Plans Consortium, LLC (ECF No. 13).  These matters were consolidated for hearing with telephonic argument on December 3, 2012.  Andrea L. Schmitt and Lori A. Isley appeared on behalf of the Plaintiffs.  Brian C. Balch appeared on behalf of Defendant Farmland Management Services.  John Ray Nelson appeared on behalf of Defendants John Hancock Life & Health Insurance and Texas Municipal Plans Consortium.  Brendan V. Monahan

ORDER DENYING MOTIONS TO DISMISS ~ 1

and Sarah L. Wixson appeared on behalf of Defendant NW Management and

Realty Services, Inc.[1]  The Court has reviewed the motions, the responses, and the

replies, and is fully informed.

BACKGROUND

This is a farm workers' rights case.  Plaintiffs have sued their former

employer, Defendant NW Management and Realty Services ("NW Management")

for violations of the Migrant and Seasonal Agricultural Worker Protection Act

("AWPA"), 29 U.S.C. § 1801, *et seq.*, the Washington Farm Labor Contractors Act

("FLCA"), RCW 19.30.010, *et seq.*, and the Washington Little-Norris LaGuardia

Act ("LaGuardia Act"), RCW 49.32.020.  Plaintiffs have also sued the owners and

the lessee of the orchards at which they worked, Defendants John Hancock Life &

Health Insurance and Texas Municipal Plans Consortium (collectively "John

Hancock") and Farmland Management Services ("Farmland"), respectively, for

violations of the FLCA.  These latter claims are based on allegations that John

Hancock and Farmland "knowingly use[d] the services" of an unlicensed farm

labor contractor (Defendant NW Management) in violation of RCW 19.30.200.

---

[1] Defendant NW Management has not taken any position on the motions presently

before the Court.

ORDER DENYING MOTIONS TO DISMISS ~ 2

Defendants John Hancock and Farmland have moved to dismiss the FLCA causes of action against them for failure to state a claim.  First, they argue that they did not "use the services" of an unlicensed farm labor contractor within the meaning of RCW 19.30.200.  Second, they argue in the alternative that they did not "knowingly" hire an unlicensed contractor as the statute requires.  Finally, Farmland argues that Defendant NW Management does not qualify as a "farm labor contractor" under the FLCA and that it therefore cannot be liable for NW Management's alleged misconduct.

The most significant issue raised by the instant motions is whether RCW 19.30.200—which prohibits the "knowing" use of an unlicensed farm labor contractor—requires users to verify that a particular contractor is licensed before engaging the contractor's services.  For the reasons discussed below, the Court determines that it does.  Under RCW 19.30.200, a person who hires an unlicensed farm labor contractor without attempting to verify that the contractor is licensed by the Washington Department of Labor and Industries is liable for any FLCA violations committed by the contractor.  Accordingly, the Court concludes that Plaintiffs have asserted a legally cognizable claim against John Hancock and Farmland.

//

//

ORDER DENYING MOTIONS TO DISMISS ~ 3

FACTS

Plaintiffs are seasonal farm laborers who worked at apple orchards known as Alexander I, Alexander II, and Independence in Yakima County.  At all times relevant to this lawsuit, Alexander I, Alexander II and Independence were owned by Defendant John Hancock and leased to Defendant Farmland.  In 2009, 2010 and 2011, Farmland contracted with Defendant NW Management to provide and supervise seasonal farm laborers for the annual apple harvest.  Plaintiffs allege that NW Management was not properly licensed as a farm labor contractor under the FLCA during these years.  Pls.' Compl., ECF No. 1, at ¶¶ 18-19.  Plaintiffs further allege that John Hancock and Farmland "knowingly used" NW Management's unlicensed services in violation of RCW 19.30.200 "by failing to investigate whether Defendant [NW Management] was properly licensed."  Pls.' Compl., ECF No. 1, at ¶ 39.  For purposes of this motion, the Court accepts these allegations as true.  *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2079 (2011).

DISCUSSION

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a [plaintiff's] claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a Rule 12(b)(6) motion, a plaintiff must allege facts which, when taken as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation

ORDER DENYING MOTIONS TO DISMISS ~ 4

omitted).  To satisfy this standard, the allegations in a complaint must be sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice.  *Iqbal*, 556 U.S. at 678.

In addition, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  To determine whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled.  Although a court may (and generally should) draw reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), it need not accept "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

The Ninth Circuit has repeatedly instructed district courts to "grant leave to amend even if no request to amend the pleading was made, unless . . . the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  The standard for granting leave to amend is

ORDER DENYING MOTIONS TO DISMISS ~ 5

generous—the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether leave to amend is appropriate, a court must consider the following five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

**A. Overview of the Farm Labor Contractors Act ("FLCA")**

The FLCA is a Washington statute which "attempts to protect farm workers against exploitation by farm labor contractors." *Perez-Farias v. Global Horizons*, Inc., --- Wash.2d ---, 2012 WL 4461685 at *1 (Sept. 27, 2012). The statute defines a "farm labor contractor" as any person who recruits, solicits, employs, supplies, transports, or hires a farm laborer on behalf of a farmer. *See* RCW 19.30.010(1)-(5). Thus, for all practical purposes, a "farm labor contractor" is essentially a broker of farm labor. *Perez-Farias*, --- Wash.2d ---, 2012 WL 4461685 at *1.

Like most brokers, farm labor contractors are heavily regulated. Among other things, the FLCA requires them to fully disclose all terms and conditions of a farm worker's employment and to refrain from committing acts which amount to crimes of moral turpitude. *See* RCW 19.30.110 (affirmative duties); RCW 19.30.120 (prohibited acts). The FLCA further requires farm labor contractors to

obtain a license from the Department of Labor and Industries and to post a security

bond to insure compliance with the FLCA's regulations. RCW 19.30.020, .040.

Most notably for purposes of the instant motions, the FLCA also regulates

the users of farm labor contractors' services by penalizing those who hire an

unlicensed contractor. Specifically, the statute provides that anyone who

"knowingly" uses the services of an unlicensed farm contractor can be liable along

with the contractor for violations of the FLCA:

> Any person who knowingly uses the services of an unlicensed farm
> labor contractor shall be personally, jointly, and severally liable with
> the person acting as a farm labor contractor to the same extent and in
> the same manner as provided in this chapter. In making
> determinations under this section, any user may rely upon either the
> license issued by the director to the farm labor contractor under RCW
> 19.30.030 or the director's representation that such contractor is
> licensed as required by this chapter.

RCW 19.30.200. Thus, under the FLCA, any farm worker who is injured at the

hands of an unlicensed farm labor contractor may seek recovery from the entity

which hired the unlicensed contractor. That is precisely the theory of recovery that

Plaintiffs have asserted against John Hancock and Farmland in this case.

## B. The "Single-Employer Exception" Does not Apply to NW Management

Defendant Farmland asserts that Defendant NW Management does not

qualify as a "farm labor contractor" as defined by the FLCA, and that, by logical

extension, Farmland could not have violated RCW 19.30.200 by hiring an

*unlicensed* "farm labor contractor." In support of this argument, Farmland notes

ORDER DENYING MOTIONS TO DISMISS ~ 7

that the FLCA specifically excepts from its definition of "farm labor contractor" any person who engages in farm labor contracting activities "only within the scope of his or her regular employment for one agricultural employer on whose behalf he or she is so acting." RCW 19.30.010(6). Farmland does not argue that this exception applies to NW Management, but simply notes that Plaintiffs have made no allegation to the contrary in their complaint. By failing to plead that this single-employer exception does *not* apply, Farmland argues, Plaintiffs have failed to state a claim that Farmland hired an "unlicensed farm labor contractor" in violation of RCW 19.30.200. ECF No. 18 at 6-10.

As an initial matter, Farmland's silence on the issue of whether the single-employer exception *actually* applies to NW Management is highly suspect. In twelve total pages of briefing on this issue, Farmland never once asserts that NW Management was acting "only within the scope of [its] regular employment for one agricultural employer." RCW 19.30.200. Instead, Farmland attempts to flip the script by arguing that it was "incumbent" upon Plaintiffs to affirmatively eliminate that possibility. ECF No. 18 at 8. Farmland also makes a rather confusing argument that NW Management might qualify for the single-employer exception on the theory that NW Management essentially engaged in farm labor contracting activities on its own behalf rather than on behalf of Farmland. *See* ECF No. 48 at 9.

ORDER DENYING MOTIONS TO DISMISS ~ 8

It appears from the current record that Farmland's arguments concerning the single-employer exception are entirely lacking in factual support. Tellingly, NW Management itself has not asserted that the single-employer exception applies. Rather, NW Management has simply asserted that it was not acting as a farm labor contractor within the meaning of RCW 19.30.010(2) and (3) in the first place. *See* Def.'s Answer, ECF No. 14, at ¶¶ 18-19.[2]  In view of NW Management's own position (or lack thereof) on the issue, it would seem that Farmland lacks an adequate *factual* basis for implying that the single-employer exception applies to NW Management. *See* Fed. R. Civ. P. 11(b)(2) (by signing pleading, attorney certifies that the legal arguments and factual assertions therein have adequate evidentiary support).

In any event, the single-employer exception is an affirmative defense which Plaintiffs were not required to address in their Complaint. In determining whether

---

[2] NW Management filed its Answer on September 26, 2012, the same day that Farmland filed its motion to dismiss. Accordingly, the Court will not charge Farmland with knowledge of NW Management's denials and affirmative defenses on that date. The Court will, however, assume that Farmland was fully aware of NW Management's defense position when it continued to argue in favor of the single-employer exception in its reply brief over one month later. *See* ECF No. 48.

a statutory exception should be treated as an affirmative defense, "the court looks to (1) whether the statute reflects a legislative intent to treat absence of the exception or the existence of a justification as one of the elements of a cause of action[,] or (2) whether the justification negates an element of the action which the plaintiff must prove." *Kastanis v. Educ. Emp. Credit Union*, 122 Wash.2d 483, 493 (1993). Here, the FLCA does not reflect legislative intent to treat the absence of the single-employer exception as an element of an FLCA claim. Rather, the intent of the statute is simply to exempt a narrow category of persons from the FLCA's licensing requirement and regulations. Moreover, since the single-employer exception is not a "justification" defense, the second prong of the inquiry does not apply. Accordingly, Plaintiffs' failure to plead that the single-employer exception does *not* apply does not warrant dismissal of their FLCA claims.

**C. Plaintiffs Have Stated a Claim that John Hancock and Farmland "Used the Services" of NW Management**[3]

John Hancock and Farmland argue that Plaintiffs have failed to adequately support their allegations that John Hancock and Farmland "used the services" of an unlicensed farm labor contractor within the meaning of RCW 19.30.200. ECF No.

---

[3] Because Plaintiffs have not yet been granted leave to file their Proposed First Amended Complaint (ECF No. 53-1), the Court will limit its analysis of this issue to the facts alleged in Plaintiffs' original Complaint (ECF No. 1).

15 at 6; ECF No. 49 at 3.  Contrary to these assertions, Plaintiffs have pled

sufficient facts to state a claim for violations of RCW 19.30.200.  In addition to

alleging that John Hancock and Farmland "knowingly used the services of [NW

Management] in 2009, 2010 and 2011" (Pls.' Compl., ECF No. 1, at ¶ 28),

Plaintiffs have alleged: (1) that John Hancock owned the Alexander I, Alexander II

and Independence orchards (Pls.' Compl., ECF No. 1, at ¶¶ 23-24); (2) that John

Hancock leased these properties to Farmland[4] (Pls.' Compl., ECF No. 1, at ¶ 25);

(3) that Farmland contracted with NW Management to manage the Independence

orchard (Pls.' Compl., ECF No. 1, at ¶ 26), and may have entered into a similar

agreement with respect to the Alexander I and Alexander II orchards (Pls.' Compl.,

ECF No. 1, at ¶ 27); (4) that NW Management performed farm labor contracting

activities for John Hancock and/or Farmland pursuant to these agreements (Pls.'

---

[4] Plaintiffs have not specifically alleged that John Hancock leased the Alexander I

and Alexander II orchards to Farmland.  Neither John Hancock nor Farmland has

noted this omission, and the status of these properties does not appear to be in

dispute.  Accordingly, the Court will liberally construe the Complaint (specifically

the allegation that Farmland may have hired NW Management to manage the

Alexander I and Alexander II orchards) to allege that John Hancock did, in fact,

lease these properties to Farmland.

ORDER DENYING MOTIONS TO DISMISS ~ 11

1    Compl., ECF No. 1, at ¶ 36); and (5) that NW Management was not licensed as a

2    farm labor contractor during the years in question (Pls.' Compl., ECF No. 1, at ¶¶

3    18-19).

4            These allegations are sufficient to establish that John Hancock and Farmland

5    "used the services" of an unlicensed farm labor contractor.  Accepted as true, these

6    allegations establish that Farmland directly hired NW Management to manage the

7    Alexander I, Alexander II and Independence orchards.  Thus, on the facts alleged

8    in the Complaint, there can be no question that Farmland "used [NW

9    Management's] services."

10           Plaintiffs' allegations also plausibly establish that Farmland was acting as

11   John Hancock's agent when it hired NW Management and/or that John Hancock

12   was involved in the decision to hire NW Management.  Thus, Plaintiffs'

13   allegations are sufficient to state a claim against John Hancock for "us[ing] the

14   services" of an unlicensed farm labor contractor on an agency theory.

15           Whether Farmland was in fact acting as John Hancock's agent and whether

16   John Hancock was otherwise involved in the decision to hire NW Management are

17   issues of fact which may warrant further examination as the case proceeds.

18   Accordingly, the Court's ruling on this issue does not preclude John Hancock from

19   raising this issue again on summary judgment.

20   //

ORDER DENYING MOTIONS TO DISMISS ~ 12

**D. The FLCA Requires Users of Farm Labor Contractors to Verify that a Contractor is Licensed**

As noted above, the primary issue raised in the instant motions is whether the FLCA requires those who hire farm labor contractors to verify that a particular contractor is licensed. More specifically, the question is whether a person who hires an *unlicensed* farm labor contractor without first attempting to verify that the contractor is properly licensed has violated the FLCA. To answer this question, the Court must look to the language of RCW 19.30.200:

> Any person who knowingly uses the services of an unlicensed farm labor contractor shall be personally, jointly, and severally liable with the person acting as a farm labor contractor to the same extent and in the same manner as provided in this chapter. In making determinations under this section, any user may rely upon either the license issued by the director to the farm labor contractor under RCW 19.30.030 or the director's representation that such contractor is licensed as required by this chapter.

RCW 19.30.200.

In construing the above statute, the Court's "fundamental objective is to ascertain and carry out the [Washington] legislature's intent." *Broughton Lumber Co. v. Burlington N. Santa Fe Ry. Co.*, 174 Wash.2d 619, 625 (2012). "If the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Christen v. Ellsworth*, 162 Wash.2d 365, 372-73 (2007) (quotation omitted). When discerning plain meaning, the Court may look to "the ordinary meaning of the language at issue, the context

ORDER DENYING MOTIONS TO DISMISS ~ 13

of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.* at 373. Further, the Court "must not interpret a statute in any way that renders any portion meaningless or superfluous." *Broughton Lumber*, 174 Wash.2d at 634.

If—and only if—the Court is unable to ascertain the legislature's intent from a statute's plain language, it may then "resort to statutory construction, legislative history, and relevant case law for assistance." *Christen*, 162 Wash.2d at 373; *see also Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 168 Wash.2d 421, 433 (2010) (noting that court's interpretive duties are "at an end" when a statute's meaning is plain on its face). In broadening the scope of its interpretive analysis, however, the Court must "avoid interpretations that yield unlikely, absurd or strained consequences." *Broughton Lumber*, 174 Wash.2d at 635 (quotation and citation omitted). A consequence is considered unlikely, absurd or strained when it is "inconceivable" that the legislature intended the consequence when it drafted the statute. *See State v. Ervin*, 169 Wash.2d 815, 824 (2010) ("It is conceivable the legislature might have intended this result[;] [b]ecause it is conceivable, the result is not absurd.").

1. Plain Meaning

John Hancock and Farmland argue that the word "knowingly" in RCW 19.30.200 should be interpreted to mean "with awareness, deliberateness, or

1    intention." ECF No. 15 at 7.  Because "knowingly" is not defined in the statute,

2    they argue, the Court must assign the term its ordinary dictionary meaning.  ECF

3    No. 15 at 7.  Thus, according to John Hancock and Farmland, the plain language of

4    the statute indicates that a person cannot "knowingly use" the services of an

5    unlicensed farm labor contractor by simply failing to investigate whether the

6    contractor is licensed.  ECF No. 15 at 7.

7          Plaintiffs counter that the word "knowingly" must be interpreted in the

8    context of the entire statutory text and with a view toward the FLCA's remedial

9    purpose.  In their opinion, the second sentence of the statute requires a user to

10   make a "determination" as to whether a farm labor contractor is licensed by either

11   inspecting a copy of the contractor's license or by verifying with the Department of

12   Labor and Industries that a valid license has been issued.  Plaintiffs further assert

13   that this reading of the statute better comports with the FLCA's overall purpose,

14   which is to prevent farm workers from being exploited by persons with superior

15   resources and bargaining power.  According to Plaintiffs, interpreting the term

16   "knowingly" to mean *actual knowledge* would give users of farm labor contractors

17   a perverse incentive to remain deliberately ignorant of a contractor's license status.

18         The Court determines that the plain language of the statute requires users to

19   investigate whether a particular contractor is licensed.  As Plaintiffs correctly note,

20   the Court must give effect to every word in the statute.  *Broughton Lumber*, 174

1    Wash.2d at 634.  In this case, interpreting the statute to require *actual knowledge*

2    that a particular contractor is unlicensed would render the second sentence of the

3    statute superfluous.  The second sentence begins, "*In making determinations under*

4    *this section*, any user may rely upon . . ."  RCW 19.30.200 (emphasis added).  This

5    language clearly contemplates that users will make a "determination" of some

6    kind.  When read in context of the entire statute, the "determination" to be made is

7    whether a particular farm labor contractor is properly licensed.  And while the use

8    of the phrase "*in making* determinations" is admittedly awkward given that the first

9    sentence does not introduce a determination to be made,[5] the only fair reading of

10   the statute as a whole is that a determination must, in fact, be made.

11         Further, the Court is not persuaded by John Hancock's argument that the

12   second sentence of the statute simply creates a presumptive "safe harbor" provision

13   in favor of users who choose to investigate a contractor's license status.  ECF No.

14   49 at 5-6.  Contrary to John Hancock's assertions, this interpretation does not

15   appropriately harmonize the first and second sentences because it effectively

16   _____

17   [5] *Cf.* 29 U.S.C. § 1842 ("No person shall utilize the services of any farm labor

18   contractor . . . unless the person first *takes reasonable steps to determine* that the

19   farm labor contractor possesses a [valid license].  In making that determination, the

20   person may rely upon . . . ") (emphasis added).

ORDER DENYING MOTIONS TO DISMISS ~ 16

renders the "determination" requirement optional.  Nothing in the statute's plain language supports this result.  As noted above, the only fair reading of the phrase "in making determinations" in the context of the entire statute is that the making of a determination is mandatory.

In sum, the Court concludes that the meaning of RCW 19.30.200 is clear from the face of the statute: a user of a farm labor contractor must investigate whether the contractor is licensed.  Failure to do so will expose the user to joint and several liability for any FLCA violations committed by the contractor.  The Court must give effect to this clear expression of legislative intent.  *Broughton Lumber*, 174 Wash.2d at 625; *Christen*, 162 Wash.2d at 372-73.  Accordingly, John Hancock's and Farmland's motion to dismiss for failure to state a legally cognizable claim is denied.

2. Legislative History

Having concluded that the plain language of RCW 19.30.200 is clear, the Court need not examine the statute's legislative history.  *Christen*, 162 Wash.2d at 373; *Columbia Physical Therapy*, 168 Wash.2d at 433.  Even assuming *arguendo* that the statutory text is susceptible to multiple interpretations, however, there is no basis for adopting John Hancock's and Farmland's narrow interpretation.  As Plaintiffs correctly note, limiting RCW 19.30.200's knowledge requirement in the manner that John Hancock and Farmland have proposed (*i.e.*, to apply only to

those with *actual knowledge* that a particular contractor is unlicensed) would give the users of farm labor contractors a strong *disincentive* to investigate whether a particular contractor is licensed. For all practical purposes, this interpretation would result in the statute being enforced against only those users who *did* investigate a contractor's license status, as those who refrained from investigating could plausibly deny actual knowledge that a particular contractor was unlicensed. By any measure, that is an absurd result. *See State v. Ervin*, 169 Wash.2d at 824 (holding that a result is unlikely, absurd or strained when it is "inconceivable" that the legislature intended it when drafting the statute).

At bottom, the purpose of the FLCA is to protect the rights of vulnerable farm workers. *Perez-Farias*, --- Wash.2d ---, 2012 WL 4461685 at *5. Section 19.30.200 achieves this purpose by prompting (or at the very least, encouraging) those who employ farm labor contractors to verify that a particular contractor is licensed and subject to oversight by the Department of Labor and Industries. Adopting John Hancock's and Farmland's construction of the statute would severely undermine this purpose. If *actual* knowledge were a prerequisite to liability under RCW 19.30.200, users of farm labor contractors would have every reason *not* to inquire about a contractor's license status. That is exactly the opposite of what the legislature intended when it drafted the statute. For this additional reason, the motions to dismiss are denied.

ORDER DENYING MOTIONS TO DISMISS ~ 18

**ACCORDINGLY, IT IS HEREBY ORDERED:**

The motions to dismiss filed by Defendant Farmland Management Services (ECF No. 12) and Defendants John Hancock Life & Health Insurance Co. and Texas Municipal Plans Consortium, LLC (ECF No. 13) are **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 3rd day of December, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER DENYING MOTIONS TO DISMISS ~ 19