UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ABELARDO SAUCEDO, et al.<br><br>Plaintiffs,<br><br>v.<br><br>NW MANAGEMENT AND REALTY SERVICES, et al.,<br><br>Defendants. | NO: 12-CV-0478-TOR<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PROTECTIVE ORDER |

BEFORE THE COURT is Plaintiffs' Motion For Order Restricting Defendants' Contact With Absent Class Members and Protective Order on Immigration Status (ECF No. 78). This matter was heard with telephonic oral argument on January 11, 2013. Lori A. Isley and Andrea J. Schmitt appeared on behalf of the Plaintiffs. Brendan V. Monahan and Sarah L. Wixon appeared on behalf of Defendant NW Management and Realty Services, Inc. John R. Nelson appeared on behalf of Defendants John Hancock Life & Health Insurance, Co. and Texas Municipal Plans Consortium, LLC. Leslie R. Weatherhead and Geana Van

ORDER ~ 1

Dessel appeared on behalf of Defendant Farmland Management Services. This Order will memorialize the Court's oral ruling at the conclusion of the motion hearing.

## BACKGROUND

Plaintiffs have moved for a protective order preventing Defendants and their agents from (1) interviewing putative class members about their immigration status; and (2) engaging in *ex parte* contact with putative class members about this case. The Court will grant the motion as it pertains to inquiries into immigration status, but deny the motion as it pertains to other *ex parte* contacts with putative class members.

## DISCUSSION

In class action cases, defendants are generally permitted to interview putative class members *ex parte* before a class is formally certified. Such pre-certification interviews are permitted on the theory that putative class members do not become represented by counsel until the class is actually certified. *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002). Nevertheless, despite this absence of an attorney-client relationship, a district court may restrict a defendant's pre-certification contacts with putative class members in order to prevent abuse. *Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981). Any such restrictions on pre-certification contacts must be based upon "a clear record and

specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.*  This weighing of the competing interests "should result in a carefully drawn order that limits speech as little as possible." *Id.* at 102.

### A. Immigration Status

Defendant Farmland Management Services ("Farmland") has hired a private investigator to interview putative class members about their immigration status.  This investigator intends to ask "among other things . . . whether the Plaintiffs and the members of the putative class are lawfully entitled to work in the United States, and if not[,] whether they provided false statements or documents to Defendant NWMS to obtain employment." ECF No. 91 at 4.  Farmland intends to use this information for two purposes.  First, it believes that immigration status is germane to contesting the suitability of class certification under the criteria set forth in Federal Rule of Civil Procedure 23.  Second, Farmland suggests that evidence of a class member's illegal immigration status and/or fraud in procuring false immigration documents may be used for impeachment purposes at trial.

The Court finds that immigration status is not particularly relevant to the issue of whether the proposed class should be certified pursuant to Federal Rule of Civil Procedure 23(b)(3).  Contrary to Farmland's assertions, evidence that certain putative class members are in the United States illegally would have virtually no

ORDER ~ 3

bearing on whether the proposed class satisfies the numerosity, commonality, typicality and adequacy of representation criteria set forth in Rule 23(a). *See Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 502 (W.D. Mich. 2005) (farm workers' immigration status not relevant to class certification issues in AWPA case). As Plaintiffs correctly note, these criteria focus primarily on the nature of the claims being asserted rather than on the individual circumstances of each putative class member. Similarly, immigration status is not especially relevant to the predominance and superiority inquiries under Rule 23(b)(3). Here again, there is nothing to suggest that evidence concerning putative class members' immigration status would tip the scales in either direction. At bottom, the immigration status of individual putative class members is simply not relevant to the issue of whether the proposed class should be certified.

Further, the Court finds that Farmland's proposal to question putative class members about their immigration status—particularly at this early stage of the proceedings—is inherently coercive. *See Rivera v. NIBCO*, Inc., 364 F.3d 1057, 1064-65 (9th Cir. 2004) (upholding entry of protective order barring employer from inquiring into workers' immigration status on the ground that allowing the defendant to make such inquiries "would chill the plaintiffs' willingness and ability to bring [their] claims"). Indeed, there can be little doubt that using a private investigator to track down and interview putative class members in their private

ORDER ~ 4

residences about their immigration status is likely to cause intimidation. As the Ninth Circuit noted in *Rivera*,

> Even *documented* workers may be chilled by the type of discovery at issue here. Documented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends; similarly, new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding. Any of these individuals, failing to understand the relationship between their litigation and immigration status, might choose to forego civil rights litigation.

364 F.3d at 1065 (emphasis added). Under the circumstances presented here, the putative class members' interests in pursuing their claims without being intimidated substantially outweighs Farmland's interest in questioning them about their immigration status.

Finally, with regard to Farmland's interest in developing potential impeachment evidence, the Court questions whether Farmland (or any other Defendant) should be permitted to use evidence of a putative class member's illegal immigration status for impeachment purposes at trial. As the Washington Supreme Court recently noted in *Salas v. Hi-Tech Erectors*, the admission of a plaintiff's illegal immigration status poses "a significant danger of interfering with the fact finder's duty to engage in reasoned deliberation." 168 Wash.2d 664, 672 (2010). Even when relevant to a disputed issue at trial, the probative value of such evidence is likely to be substantially outweighed by the risk of unfair prejudice.

ORDER ~ 5

*See id.* ("In light of the low probative value of immigration status with regard to lost future earnings, the risk of unfair prejudice brought about by the admission of a plaintiff's immigration status is too great."). Given that a class of plaintiffs has not yet been certified, however, the Court will reserve ruling on this issue.

### B. Other *Ex Parte* Contacts

Plaintiffs also seek an order prohibiting Defendants from engaging in any form of *ex parte* contact with putative class members. At this juncture, the Court is not inclined to enter such an order. As noted above, defendants in class action cases are generally permitted to contact putative class members *ex parte* about the case before a class is formally certified. *Parks*, 235 F. Supp. 2d at 1084. Aside from Farmland's proposal to question putative class members about their immigration status, Plaintiffs have presented very little evidence upon which the Court might make specific findings concerning a potential for abuse. *See Gulf Oil*, 452 U.S. at 101. Although the existence of an employee-employer relationship has some potential to lead to untoward conduct, there is no evidence that any such conduct is likely to occur in this case. Accordingly, Defendants shall be permitted to contact putative class members *ex parte*—provided that they make no references whatsoever to a putative class member's immigration status and related issues.

Finally, the Court remains cognizant of Defendant NW Management's concerns regarding potential inquires about the case from its employees in the

ORDER ~ 6

event that the class is certified.  The Court agrees that any such inquires have the potential to place NW Management in the untenable position of communicating with a represented party about the subject-matter of a case.  *See* Washington Rule of Professional Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").  Unless and until the class is certified, however, NW Management's employees (with the exception of the named class representatives) are not represented parties within the meaning of the ethics rules.  *See Parks*, 235 F. Supp. 2d at 1084.  In the event that the Court grants Plaintiffs' pending class certification motion, it will issue specific directives to NW Management concerning contact with members of the class.

**C. Request for Attorney's Fees**

Plaintiffs have moved for an award of reasonable attorney's fees incurred in bringing the instant motion.  Because the motion has been granted in part and denied in part, the Court is vested with discretion to award reasonable attorney's fees on a prorated basis.  Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5)(C).  The Court, in the exercise of its discretion, will decline to enter such an award.

///

ORDER ~ 7

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Plaintiffs' Motion For Order Restricting Defendants' Contact With Absent Class Members and Protective Order on Immigration Status (ECF No. 78) is **GRANTED in part** and **DENIED in part**.  Defendants shall not conduct any discovery, formal or informal, during the pre-certification stage of this case relating to immigration status, including, but not limited to: immigration documents, passports, visas, social security numbers, social security statements, tax identification numbers, I-9 tax forms from any employer, unemployment compensation information, and information about national origin and entry into the United States, **except** that Defendant NW Management Services may continue to follow its ordinary custom and practice in complying with federal law.  Defendants shall be free to communicate *ex parte* with putative class members on topics unrelated to immigration status, provided that these communications comport with the letter and spirit of the rules pertaining to pre-class certification discovery.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 15th day of January, 2013.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER ~ 8