1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7    ABELARDO SAUCEDO, et al.,

                                         NO:  12-CV-0478-TOR
8                      Plaintiffs,
                                         ORDER GRANTING IN PART AND
9         v.                             DENYING IN PART PLAINTIFFS'
                                         MOTION FOR CLASS
10   NW MANAGEMENT AND REALTY            CERTIFICATION
     SERVICES, INC., et al.,
11
                       Defendants.
12

13        BEFORE THE COURT are the following motions: (1) Plaintiffs' Motion for

14   Class Certification (ECF No. 57); Defendants' Motion to Strike (ECF No. 147);

15   and (3) Defendants' Motion to Expedite (ECF No. 148).  These motions were

16   heard with telephonic argument on February 21, 2013.  Lori A. Isley and Andrea J.

17   Schmitt appeared on behalf of the Plaintiffs.  Sarah L. Wixon appeared on behalf

18   of Defendant NW Management and Realty Services, Inc.  John R. Nelson appeared

19   on behalf of Defendants John Hancock Life & Health Insurance, Co. and Texas

20   Municipal Plans Consortium, LLC.  Leslie R. Weatherhead and Geana Van Dessel

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 1

appeared on behalf of Defendant Farmland Management Services.  The Court has reviewed the briefing and files herein and is fully informed.

BACKGROUND

Plaintiffs have moved to certify a class consisting of all farm workers who worked for Defendant NW Management and Realty Services ("NW Management") in three specific orchards during the years 2009, 2010 and 2011.  Plaintiffs assert that class certification is appropriate as to four separate claims stemming from NW Management's alleged conduct: (1) failure to obtain a farm labor contractor license in violation of the Washington Farm Labor Contractors Act ("FLCA"), RCW 19.30.010 *et seq.*; (2) failure to provide written disclosures concerning the terms and conditions of employment in violation of the FLCA; (3) making false and misleading representations about compensation in violation of the FLCA and the Agricultural Workers Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.*; and (4) unlawful intimidation of putative class members by a supervisor in violation of the FLCA.  ECF No. 58 at 4; ECF No. 128 at 3.  For the reasons discussed below, the Court will certify the proposed class as to the first and second claims only.

FACTS

Plaintiffs Abelardo Saucedo, Felipe Acevedo Mendoza and Jose Villa Mendoza represent a putative class consisting of farm workers employed by Defendant NW Management during the years 2009, 2010 and 2011.  On behalf of

the proposed class, Plaintiffs allege that NW Management failed to obtain a farm labor contractor's license, failed to provide class members with written disclosures concerning the terms and conditions of their employment, made false or misleading representations to class members about their rates of pay, and allowed class members to be intimidated by a supervisor who carried and discharged a firearm in their presence. Plaintiffs seek statutory damages for each of these alleged violations. Plaintiffs also seek to hold Defendants Farmland Management Services ("Farmland") and John Hancock Life & Health Insurance and Texas Municipal Plans Consortium (collectively "John Hancock") jointly and severally liable under the FLCA on the theory that Farmland, as the lessee of the orchards at which class members worked, and John Hancock, as the owner and lessor of the orchards, "knowingly used the services of an unlicensed farm labor contractor" (NW Management) in violation of RCW 19.30.200.

The Court previously ruled that Plaintiffs' FLCA-related allegations stated a legally cognizable claim. ECF No. 64. Defendants have since moved for partial summary judgment on this issue, arguing that NW Management does not meet the statutory definition of a "farm labor contractor." ECF No. 114. This motion is noted for hearing on April 12, 2013. ECF No. 114. Because a class certification motion must be decided "[a]t an early practicable time" after the lawsuit is filed,

1  *see* Fed. R. Civ. P. 23(c)(1)(A), the Court will decide the instant motion without

2  regard to the pending summary judgment motion.

3  DISCUSSION

4  **I.  Motion for Class Certification**

5  Certification of a class action lawsuit is governed by Rule 23 of the Federal

6  Rules of Civil Procedure.  Pursuant to Rule 23(a), the party seeking class

7  certification must demonstrate that "(1) the class is so numerous that joinder of all

8  members is impracticable; (2) there are questions of law or fact common to the

9  class; (3) the claims or defenses of the representative parties are typical of the

10  claims or defenses of the class; and (4) the representative parties will fairly and

11  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  A court

12  presented with a class certification motion must perform a "rigorous analysis" to

13  determine whether each of these prerequisites has been satisfied.  *Gen. Tel. Co. v.*

14  *Falcon*, 457 U.S. 147, 161 (1982).  "Frequently that 'rigorous analysis' will entail

15  some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart*

16  *Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011); *see also Ellis v.*

17  *Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasizing that a

18  district court "must" consider the merits of a plaintiff's claim to the extent that they

19  overlap with the prerequisites for class certification under Rule 23(a)).

20

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 4

1    Provided that proposed class satisfies the above criteria, the court must

2    further determine whether certification is appropriate under Rule 23(b).  Where, as

3    here, the plaintiff seeks certification of a so-called "damages class" under Rule

4    23(b)(3), he or she must demonstrate that (1) "questions of law or fact common to

5    class members predominate over any questions affecting only individual

6    members;" and (2) "a class action is superior to other available methods for fairly

7    and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As the

8    party moving for certification, the plaintiff bears the burden of establishing that the

9    foregoing requirements have been satisfied.  *Mazza v. Am. Honda Motor Co., Inc.*,

10   666 F.3d 581, 588 (9th Cir. 2012).

11   Here, Plaintiffs have moved to certify a class consisting of "All farm

12   workers who worked for [NW Management] in the orchards known as Alexander I,

13   Alexander II and Independence in 2009, 2010 [and] 2011."  ECF No. 58 at 1."

14   The proposed class is pursuing four separate claims for statutory damages: (1)

15   failure to obtain a farm labor contractor license in violation of RCW 19.30.020 and

16   .110(1); (2) failure to provide written disclosures concerning terms and conditions

17   of employment in violation of RCW 19.30.110(7); (3) making false and misleading

18   representations about the compensation to be paid to putative class members in

19   violation of 29 U.S.C. § 1831(e) and RCW 19.30.120(2); and (4) unlawful

20

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 5

intimidation of putative class members by a NW Management supervisor in violation RCW 19.30.120(4).  ECF No. 72 at ¶ 19.

### A. Rule 23(a) Prerequisites

#### 1. *Numerosity*

Rule 23(a)(1) provides that a proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Whether joinder would be impracticable depends upon the facts and circumstances of each case and does not, as a matter of law, require any specific minimum number of class members."  *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998).  In general, however, a class consisting of forty or more members is presumed to be sufficiently numerous.  *In re Washington Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011).

Here, Plaintiffs report that the proposed class consists of over 100 persons.  ECF No. 72 at ¶ 16.  Defendants have neither disputed the size of the proposed class nor challenged Plaintiffs' ability to satisfy the numerosity requirement.  Although this requirement is not disputed, the Court independently concludes that joinder of over 100 individual plaintiffs would be impracticable and that Rule 23(a)(1) is therefore satisfied.

#### 2. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2).  For purposes of this rule, "[c]ommonality exists where class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal quotation and citation omitted).  At its core, the commonality requirement is designed to ensure that class-wide adjudication will "generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 131 S. Ct. at 2551 (emphasis in original) (internal quotation and citation omitted).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

As the Supreme Court explained in *Dukes*, the fact that each class member's claim is grounded in an alleged violation of the same statute(s), standing alone, is insufficient to establish commonality.  131 S. Ct. at 2551.  In addition to being grounded in the same statute, the class claims "must depend upon a *common contention*." *Id.* (emphasis added).  "That common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  In other words, the "critical question" under Rule 23(a)(2) is whether the class members' claims will "stand or fall together." *Conn.*

1   *Ret. Plans and Trust Funds v. Amgen, Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011),

2   *aff'd*, ___ U.S. ___ (Slip. Op., Feb. 27, 2013).

3          For the reasons discussed below, the Court finds that the class claims for

4   failure to obtain a farm labor contractor license and failure to provide written

5   disclosures concerning terms and conditions of employment are sufficiently

6   parallel to warrant class-wide adjudication.  The class claims for providing false or

7   misleading information and unlawful intimidation, by contrast, lack a "common

8   contention" capable of generating common answers on a class-wide basis.  Due to

9   the divergent factual circumstances from which they arise, these claims cannot

10  "stand or fall together."  *Amgen*, 660 F.3d at 1175.

11              a.  <u>Failure to Obtain Farm Labor Contractor License</u>

12         Plaintiffs allege that NW Management violated the FLCA by failing to

13  obtain a farm labor contractor's license during the years 2009, 2010 and 2011.  *See*

14  RCW 19.30.020(1) (requiring any person acting as a "farm labor contractor" to be

15  licensed by the Washington Department of Labor and Industries); RCW

16  19.30.110(1) (requiring farm labor contractor to carry a current license at all times

17  and "exhibit it to all persons with whom the contractor intends to deal").  Plaintiffs

18  further allege that Farmland and John Hancock violated the FLCA by knowingly

19  using NW Management's unlicensed services during the same years.  *See* RCW

20  19.30.020 (imposing joint and several liability upon "any person who knowingly

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 8

uses the services of an unlicensed farm labor contractor"). Plaintiffs seek statutory damages in the amount of $500 per plaintiff per violation, plus costs and attorney's fees under RCW 19.30.170. *See Perez-Farias v. Global Horizons, Inc.*, 175 Wash.2d 518, 530 (2012) (establishing $500 per plaintiff per violation as appropriate measure of statutory damages under RCW 19.30.170(2)).

Defendants concede that NW Management was not licensed as a farm labor contractor during the years 2009, 2010 and 2011. ECF No. 90 at ¶ 40; ECF No. 75 at ¶ 40; ECF No. 76 at ¶ 40; ECF No. 77 at ¶ 40. Defendants further concede that Farmland and John Hancock contracted with NW Management during these same years. Thus, the only disputed issues for purposes of establishing liability are (1) whether NW Management qualifies as a "farm labor contractor" within the meaning of RCW 19.30.010(2) such that it was required to obtain a farm labor contractor's license; [1] and (2) whether Farmland and John Hancock "knowingly used" NW Management's unlicensed services such that they may be held jointly and severally liable for the alleged violations. Resolution of these two issues, which are common to all members of the proposed class, will either establish or negate liability "in one stroke." *See Dukes*, 131 S. Ct. at 2551.

---

[1] As noted above, this issue is the subject of a pending motion for partial summary judgment filed by all Defendants. *See* ECF No. 114.

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 9

1     Finally, the putative class members are not required to prove that they were

2  individually "aggrieved" by the alleged FLCA violations.  Contrary to Defendants'

3  assertions, standing to pursue statutory damages under the FLCA is not contingent

4  upon a farm worker establishing that he or she was individually "aggrieved" by the

5  defendant's conduct.  This issue was recently decided by the Ninth Circuit (albeit

6  in an unpublished opinion) after the Washington Supreme Court declined to

7  address it as a certified question in the *Perez-Farias* litigation.  *See Perez-Farias v.*

8  *Global Horizons, Inc.*, 668 F.3d 588, 590 (9th Cir. 2011) (certifying to the

9  Washington Supreme Court the following question: "Does the FLCA provide for

10  awarding statutory damages to persons who have not been shown to have been

11  'aggrieved' by a particular violation?"); *Perez-Farias*, 175 Wash.2d at 535

12  (leaving the question for the Ninth Circuit to decide); *Perez-Farias v. Global*

13  *Horizons, Inc.*, 2012 WL 6053051 at * 1 (9th Cir., Dec. 5, 2012) (unpublished)

14  (answering question in the affirmative, holding that "[p]roof of injury from each

15  class member is not required").  Accordingly, the Court finds that the class claim

16  for failure to obtain a farm labor contractor's license satisfies Rule 23(a)(2)'s

17  commonality requirement.

18          b.  Failure to Provide Written Disclosures

19     The second class claim arises from NW Management's failure to provide

20  putative class members with written disclosures concerning the terms and

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 10

conditions of their employment in violation of RCW 19.30.110(7).  ECF No. 72 at

¶ 19(c).  As Plaintiffs correctly note, RCW 19.30.110(7) requires farm labor

contractors to provide each farm worker with a written statement describing, *inter

alia*, the rate at which the worker will be compensated; the terms and conditions of

any bonuses offered; the conditions and costs of any employee benefits provided;

the approximate dates of employment; the anticipated services to be performed; the

name and address of the farm labor contractor; the name(s) and address(es) of the

owner(s) of the land to be farmed; and the worker's right to make a claim against

the farm labor contractor's surety bond.  RCW 19.30.110(7)(a)-(l).

Here, NW Management concedes that it did not provide written disclosures

to the putative class members.  ECF No. 90 at ¶ 46.  In light of this concession, the

only disputed issue for purposes of this claim is whether NW Management was

*required* to provide the disclosures.  As with the failure to register claim discussed

above, resolution of this issue hinges on whether NW Management meets the

statutory definition of "farm labor contractor" under RCW 19.30.010.  Once again,

this issue is common to all members of the proposed class and is dispositive for

purposes of establishing liability.  Accordingly, the Court finds that the class claim

for failure to provide written disclosures specifying the terms and conditions of

employment satisfies Rule 23(a)(2)'s commonality requirement.

///

c. <u>Misrepresentations Relating to Compensation</u>

Plaintiffs' misrepresentation claim is grounded in allegations that NW Management "made or caused to be made false, fraudulent, or misleading representations concerning the terms, conditions or existence of employment including the wage rates to be paid and the method of computing the rate of compensation in violation of 29 U.S.C. § 1831(e) and RCW 19.30.120(2)." ECF No. 72 at ¶ 19(a). The force of these allegations is that NW Management, through its agent Juan Morfin, systematically cheated workers out of wages owed to them. Specifically, Plaintiffs assert that Mr. Morfin "unilaterally lowered promised wage rates, and routinely shorted workers of hours, trees, rows, and bins." ECF No. 128 at 7. According to Plaintiffs, this practice resulted in NW Management "issu[ing] false or misleading paystubs to workers." ECF No. 128 at 7-8.

1. *AWPA – 29 U.S.C. § 1831(e)*

To establish a violation of 29 U.S.C. § 1831(e), Plaintiffs must first demonstrate that NW Management is a "farm labor contractor, agricultural employer, or agricultural association" as those terms are defined in 29 U.S.C. § 1802. 29 U.S.C. § 1831(e). Next, Plaintiffs must prove that NW Management (1) knowingly; (2) provided false or misleading information; (3) concerning the terms, conditions, or existence of agricultural employment; (4) which (truthful) information was required to be disclosed under § 1831(a), (b) or (c). 29 U.S.C. §

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 12

1831(e).  Among the information required to be disclosed under § 1831(c) is "an

itemized written statement" reflecting "the basis on which wages are paid; the

number of piecework units earned, if paid on a piecework basis; the number of

hours worked; the total pay period earnings; the specific sums withheld and the

purpose of each sum withheld; and the net pay."  29 U.S.C. § 1831(c)(1)(A)-(F).

Here, Plaintiffs' theory of liability is that NW Management provided

putative class members with false or misleading paystubs in violation of § 1831(e)

ECF No. 128 at 8, 12.  Specifically, Plaintiffs allege that NW Management had a

"general policy and practice" of issuing paystubs which did not accurately reflect

the wages promised and/or the amount of work actually performed.  In support of

these allegations, Plaintiffs have produced declarations from several current and

former NW Management farm workers stating that Juan Morfin routinely and

unilaterally (1) paid workers at a lower rate of pay than was initially promised; (2)

reduced the amount of time claimed by workers on hourly tasks; and (3) lowered

the quantity of work claimed by workers on "per piece" tasks.  *See* M. Acevedo

Decl., ECF No. 135, at ¶¶ 9-11 (stating that Juan Morfin routinely "shorted"

workers on wages owed "in small amounts that . . . were not worth fighting with

him about"); M. Aguilar Decl., ECF No. 137, at ¶ 7 (stating that workers were not

paid at promised rates during the apple harvest in 2009 and 2010); M. Cisneros

Decl., ECF No. 138, at ¶¶ 3-4 (stating that Juan Morfin refused to give advance

notice of per-piece rates and routinely "shorted" workers on the number of trees

processed); C. Farias Decl., ECF No. 139, at ¶ 6 (stating that rate paid for per-piece

work was less than the rate which Juan Morfin had promised); A. Jimenez Decl.,

ECF No. 140, at ¶ 5 (stating that Juan Morfin unilaterally lowered the promised

per-bin rate during apple harvest); H. Orozco Decl., ECF No. 143, at ¶¶ 4-5

(stating that Juan Morfin frequently lowered the per-piece rate promised by another

NW Management supervisor); H. Pena Decl., ECF No. 144, at ¶¶ 4-7 (stating that

Juan Morfin attempted to "short" him an entire row of work, and "flew off the

handle" when confronted about the discrepancy); J. Puente Decl., ECF No. 145, at

¶¶ 5-6 (stating that Juan Morfin would cheat workers who "were working really

fast to earn more money" on per-piece tasks and who "put in a lot of hours" on

hourly tasks); M. Farias Decl., ECF No. 146, at ¶ 5 (stating that pay for work

monitored and recorded by Juan Morfin "would almost always be short some trees,

but not enough that you would really want to ask about").

　　　　Named class representatives Abelardo Saucedo, Felipe Acevedo and Jose

Villa offered similar testimony in their depositions.  For example, Mr. Acevedo

testified that Juan Morfin refused to pay him for a full row of trees, reduced the

per-piece rate for tree pruning from $0.65 per piece to $0.35 per piece in the

middle of a job, and credited him for working on fewer trees than he had actually

completed.  ECF No. 130-1 at Tr. 30-31, 53-59.  Mr. Saucedo testified that he was

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 14

1  subjected to similar treatment by Juan Morfin.  ECF No. 130-2 at Tr. 82-84.  Mr.

2  Villa testified that he recorded his hours and trees worked in a notebook and that

3  his paycheck contained discrepancies "over ten times a year."  ECF No. 130-5 at

4  Tr. 56-57.  Mr. Villa further testified that Juan Morfin admitted to writing down

5  fewer hours than workers had actually worked "because no one was supposed to

6  make what he made."  ECF No. 130-5 at Tr. 100-01.

7          The Court finds that these allegations are not sufficiently cohesive to warrant

8  class-wide adjudication.  As Defendants correctly note, the allegations arise from

9  multiple incidents spanning approximately three years—each of which involved a

10  unique misrepresentation.  Perhaps recognizing the difficulty inherent in proving

11  class-wide liability based upon a series of unique misrepresentations, Plaintiffs

12  have argued that NW Management had a "general policy" or "common practice"

13  of paying lower wages than the wages to which putative class members were

14  actually entitled.  ECF No. 121 at 7, 11.  The existence of such a policy or practice,

15  Plaintiffs assert, enables them to prove class-wide liability on an "aggregate" basis

16  rather than individually.  In other words, Plaintiffs seek to establish liability

17  through the use of "representative testimony" as opposed to "march[ing] every

18  putative class member into court."  ECF No. 128 at 6.

19          The problem with using "aggregate proof" to establish class-wide liability is

20  that the misrepresentations at issue are not consistent across members of the

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 15

1    putative class.  As discussed above, the allegations concerning Juan Morfin fall

2    into one of three categories.  On some occasions, Mr. Morfin allegedly arranged

3    for workers to be paid at a lower rate than the rate they had been promised.  On

4    other occasions, Mr. Morfin allegedly credited workers for fewer hours than they

5    had actually worked.  On still other occasions, Mr. Morfin allegedly credited

6    workers for fewer "pieces" than they had actually completed.  To further

7    complicate matters, these tactics are alleged to have been utilized across a variety

8    of different labor tasks (*e.g.*, picking, pruning and tying).  In sum, there is very

9    little uniformity among members of the putative class concerning the *type* and

10   *nature* of the misrepresentations made.  Accordingly, there is no basis for allowing

11   a jury to infer class-wide liability from the "representative" testimony of a handful

12   of individual class members.

13       At bottom, the only "common contention" arising from Plaintiffs' AWPA-

14   related allegations is that Juan Morfin cheated putative class members out of

15   earned wages.  That contention is not sufficiently specific to warrant class

16   treatment.  As the Supreme Court explained in *Dukes*, a common contention "must

17   be of such a nature that . . . determination of its truth or falsity will resolve an issue

18   that is central to the validity of each one of the claims in one stroke."  131 S. Ct.

19   2551; *see also Amgen*, 660 F.3d at 1175 ("Either way, the plaintiffs' claims [must]

20   stand or fall together.").  In this case, there is simply no way to either prove or

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 16

1  disprove class-wide liability "in one stroke."  Given that each alleged violation

2  arises from a unique set of facts, individual inquiries would be required to prove

3  liability.  Accordingly, the Court finds that this claim does not satisfy Rule

4  23(a)(2)'s commonality requirement.  This claim will not be certified for class-

5  wide adjudication.

6            2.  *FLCA – RCW 19.30.120(2)*

7        Plaintiffs' FLCA-based misrepresentation claim "arises from [NW

8  Management's] admitted failure to provide the required written disclosures under

9  [RCW 19.30.110(7)]."  ECF  No. 128 at 11.  Specifically, Plaintiffs assert that

10  "had [NW Management] provided the required written disclosures, it is possible

11  that many of the bait-and-switch tactics used by Juan Morfin would not have

12  happened."  ECF No. 128 at 11-12.  It is unclear how this claim differs from

13  Plaintiffs' failure to provide written disclosures claim.  Given that Plaintiffs have

14  not pointed to a specific source of false or misleading information (such as the

15  allegedly false or misleading pay stubs at issue in the AWPA claim), there is no

16  independent basis for holding Defendants liable for a separate FLCA violation.

17  Allowing this claim to proceed could subject Defendants to double liability under

18  the FLCA for the same conduct (*i.e.*, failing to provide written disclosures).

19  Accordingly, this class claim will not be certified.

20  ///

d.  <u>Intimidation of Workers (Crimes of Moral Turpitude)</u>

The final class claim stems from allegations that Juan Morfin intimidated workers by openly carrying and discharging a firearm in their presence.  Plaintiffs assert that this conduct violates RCW 19.30.120(4), which prohibits farm labor contractors from engaging in "any act . . . which constitutes a crime involving moral turpitude under any law of the state of Washington." RCW 19.30.120(4). According to Plaintiffs, the specific "crimes involving moral turpitude" implicated by Mr. Morfin's conduct are (1) unlawful display of a firearm in violation of RCW 9.41.270(1)[2]; and (2) willful discharge of a firearm in a place that might endanger others in violation of RCW 9.41.230(1)(b).[3]  ECF No. 128 at 16.

_____

[2] RCW 9.41.270(1) provides that "It shall be unlawful for any person to carry, exhibit, display, or draw any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons."  The offense is a gross misdemeanor punishable by up to 364 days in jail and/or a fine not to exceed $5,000.  RCW 9.41.270(2); RCW 9A.20.021(2).

[3] RCW 9.41.230(1)(b) provides that "any person who willfully discharges a firearm, air gun, or other weapon, or throws any deadly missile in a public place, or

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 18

As an initial matter, the Court questions whether these misdemeanor offenses amount to "crimes of moral turpitude."  Under Washington law, "[a] crime involves moral turpitude if it is an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general."  *City of Seattle v. Jones*, 3 Wash. App. 431, 437 (1970) (quotation and citation omitted).  Some examples of crimes of moral turpitude include subornation of perjury, *In re Bixby*, 31 Wash.2d 620, 623 (1948), prostitution, *Jones*, 3 Wash. App. at 437, grand larceny, *Hoagland v. Mount Vernon Sch. Dist. No. 320, Skagit Cnty.*, 95 Wash.2d 424, 434 (1981), and second degree assault involving a deadly weapon with injury to the victim, *Matter of McGrath*, 98 Wash.2d 337, 342 (1982).  The Court has not discovered any Washington authority which would support Plaintiffs' position that displaying a firearm in a manner that manifests an intent to intimidate, *see* RCW 9.41.270(1), or willfully discharging a firearm in a place where a person might be endangered, *see* RCW 9.41.230(1)(b), rise to the level of "baseness, vileness, or depravity."  *Jones*, 3 Wash. App. at 437.

Even assuming that the above offenses qualify as crimes of moral turpitude, however, the allegations concerning Juan Morfin do not present common questions

in any place where any person might be endangered thereby . . . is guilty of a gross misdemeanor."  RCW 9.41.230(1)(b).

1    of law or fact.  While there appears to be a consensus among putative class

2    members that Juan Morfin carried and occasionally fired a gun while supervising

3    workers in the orchards, there is substantial disagreement about whether this

4    conduct was calculated to intimidate.  As Defendants correctly note, two out of the

5    three named class representatives testified that they never felt intimidated by Juan

6    Morfin carrying or firing his gun.  Namely, Felipe Acevedo testified that while he

7    witnessed Mr. Morfin shoot a gun "every day," he did not interpret Mr. Morfin's

8    actions as threatening or intimidating.  F. Acevedo Dep., ECF No. 130-1, at Tr.

9    123.  Rather, he simply believed that Mr. Morfin carried and fired a gun "so that

10   people would be aware that he was carrying a weapon."  F. Acevedo Dep., ECF

11   No. 130-1 at Tr. 138.  Jose Villa also testified that he was never intimidated by

12   Juan Morfin carrying or firing a gun.  J. Villa Dep., ECF No. 130-5 at Tr. 65.  Like

13   Mr. Acevedo, Mr. Villa explained that Mr. Morfin carried and fired a gun because

14   he "just liked people knowing that he had a gun."  J. Villa Dep., ECF No. 130-5 at

15   Tr. 111.  And even Abelardo Saucedo, who testified that he *was* intimidated by Mr.

16   Morfin carrying and firing a gun, explained that he was simply afraid "that an

17   accident might occur when [Mr. Morfin] was shooting."  A. Saucedo Dep., ECF

18   No. 130-2, at Tr. 35.  In light of these differing interpretations of Mr. Morfin's

19   conduct, there does not appear to be a "common contention" capable of class-wide

20   resolution.  *Dukes*, 131 S. Ct. at 2551.

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 20

1    Furthermore, like the AWPA claim discussed above, this class claim arises

2    from a series of unique incidents.  On some occasions, Mr. Morfin fired his gun

3    into gravel on the ground.  *See* F. Acevedo Dep., ECF No. 130-1, at Tr. 121; S.

4    Saucedo Dep., ECF No. 130-4, at Tr. 57-58.  On other occasions, Mr. Morfin fired

5    at targets such as cans, *see* J. Vasquez-Tellez Dep., ECF No. 130-6, at Tr. 73, or

6    apples growing on trees.  *See* A. Saucedo Dep., ECF No. 130-2 at 31; J. Saucedo

7    Dep., ECF No. 130-3, at Tr. 31; J. Vasquez-Tellez Dep., ECF No. 130-6, at Tr. 19-

8    20.  On still other occasions, Mr. Morfin fired at gophers.  *See* J. Villa Dep., ECF

9    No. 130-5, at Tr. 65.  On yet another occasion, Mr. Morfin fired into the trunk of a

10   tree.  *See* J. Vasquez-Tellez Dep., ECF No. 130-6, at Tr. 22.  The reported

11   incidents of Mr. Morfin merely "displaying" his gun are even more varied.

12       These incidents are far too dissimilar to warrant class-wide adjudication.

13   Notably, it is not sufficient for Plaintiffs to establish that Mr. Morfin merely

14   carried or fired a gun in the presence of putative class members.  Rather, Plaintiffs

15   must establish that Mr. Morfin (1) displayed a firearm in a manner that "manifests

16   an intent to intimidate another;" or (2) willfully discharged a firearm "in any place

17   where any person might be endangered thereby."  RCW 9.41.270(1), .230(1)(b).

18   These are highly fact-sensitive inquiries which are not susceptible to class-wide

19   resolution "in one stroke."  *See Dukes*, 131 S. Ct. at 2551.  Accordingly, the Court

20   finds that the class claim for violations of RCW 19.30.120(2) does not satisfy Rule

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 21

1  23(a)(2)'s commonality requirement.  This claim will not be certified for class-

2  wide adjudication.

3      3. *Typicality*

4      Rule 23(a)(3) requires that "the claims or defenses of the representative

5  parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

6  This requirement serves to ensure that "the interest of the named representative

7  aligns with the interests of the class."  *Wolin*, 617 F.3d at 1175.  Factors relevant to

8  the typicality inquiry include "whether other members have the same or similar

9  injury, whether the action is based on conduct which is not unique to the named

10  plaintiffs, and whether other class members have been injured by the same course

11  of conduct."  *Ellis*, 657 F.3d at 984.  Stated differently, "[t]ypicality refers to the

12  nature of the claim or defense of the class representative, and not to the specific

13  facts from which it arose or the relief sought."  *Id.*; *see also Stearns v. Ticketmaster

14  Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) ("The typicality requirement looks to

15  whether the claims of the class representatives are typical of those of the class, and

16  is satisfied when each class member's claim arises from the same course of events,

17  and each class member makes similar legal arguments to prove the defendant's

18  liability.").

19      Here, the Court finds that the named class representatives' claims for failure

20  to obtain a farm labor contractor's license and failure to provide written disclosures

are typical of—indeed, identical to—the claims of the class.  Accordingly, the named representatives' interests in pursuing these claims are properly aligned with the interests of the class as a whole.  *See Wolin*, 617 F.3d at 1175.

For the reasons discussed above, the named representatives' claims for making false or misleading misrepresentations and for unlawful intimidation are not typical of the claims of each individual putative class member.  Accordingly, these claims do not satisfy Rule 23(a)(3)'s typicality requirement and will not be certified.

### 4. *Adequacy of Representation*

The final prerequisite for class certification is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement applies to both the named class representatives and to their counsel.  "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis*, 657 F.3d at 985.

Here, Defendants have raised two objections to the named class representatives' ability to fairly and adequately represent the interests of the class. First, Defendants assert that the named class representatives lack the requisite

1   knowledge of their claims.  Specifically, Defendants suggest that the named

2   representatives "do not understand their responsibilities as class representatives;

3   they do not understand the parameters of the class they purport to represent; they

4   do not understand the nature of the class claims asserted or the identity of the

5   parties they've sued; and they cannot explain their purported damages."  ECF No.

6   121 at 16-17.  In Defendants' view, the named representatives "are merely lending

7   their names to counsel's endeavors, and have never had any actual, let alone

8   meaningful, control over this case."  ECF No. 121 at 21.

9        Having reviewed the named class representatives' deposition testimony and

10  declarations, the Court finds this argument unpersuasive.  Although the named

11  plaintiffs were not able to explain the finer points of class action litigation when

12  questioned by opposing counsel, they clearly understand the two most important

13  concepts—that they are serving as representatives of a larger group of plaintiffs

14  with similar legal interests and that they must do what is best for the larger group.

15  *See* F. Acevedo Dep., ECF No. 130-1, at Tr. 35; A. Saucedo Dep., ECF No. 130-2,

16  at Tr. 8-9, 27; J. Villa Dep., ECF No. 130-5, at Tr. 11, 20-24; *see also* F. Acevedo

17  Decl, ECF No. 132, at ¶¶ 14-22; A. Saucedo Decl., ECF No. 133, at ¶¶ 14-18; J.

18  Villa Decl., ECF No. 134, at ¶¶ 14-22.  It is also clear from the named plaintiffs'

19  testimony that they are aware of the basic parameters of the class claims.  Although

20  Messrs. Acevedo, Saucedo and Villa do not appear to be highly sophisticated

litigants, the Court finds that they are capable of fairly and adequately representing the interests of the entire class.

Defendants' second objection to the named representatives is that Messrs. Acevedo, Saucedo and Villa have a conflict of interest with the other members of the putative class. The force of this argument appears to be that the named representatives are pursuing actual damages on their *individual* claims, while seeking only statutory damages in the amount of $500 per plaintiff on the *class* claims. ECF No. 121 at 24. Defendants also appear to suggest that litigating the class claims through trial or settlement will effectively preclude members of the proposed class from pursuing additional claims like those being asserted by Messrs. Acevedo, Saucedo and Villa.

The Court is not persuaded that there is a conflict of interest between the named representatives and the other members of the proposed class. As Plaintiffs correctly note, the fact that a named class representative elects to pursue additional claims in an individual capacity does not automatically give rise to a conflict. *See In re Pet Food Product Liab. Litig.*, 629 F.3d 333, 343-45 (3d Cir. 2010) (holding that named class representatives who pursued individualized injury claims in addition to class-wide reimbursement claims did not have conflict of interest with members of the larger class). Unless the named representative's interest in pursuing individual claims undermines his or her incentive to vigorously prosecute

1  the class-wide claims, no conflict arises.  *Id.*  There is simply no reason to believe

2  that such a conflict will develop here.

3         Similarly, Plaintiffs' decision to pursue statutory damages rather than actual

4  damages on their class claims does not create a conflict.  To the extent that some

5  putative class members would prefer to pursue actual damages rather than statutory

6  damages, they may simply opt out of the class.  Moreover, if this case is ultimately

7  settled, the Court will be required to evaluate the fairness, reasonableness and

8  adequacy of the settlement terms to the entire class—including class members who

9  could potentially recover larger actual damages awards. At this juncture, there is

10 simply no conflict of interest stemming from Plaintiffs' decision to seek statutory

11 damages.

12        Finally, the Court finds that counsel from Columbia Legal Services are

13 competent to represent the entire class.  Ms. Smith, Ms. Isley and Mr. Morrison

14 have relevant experience serving as class counsel in prior class action cases

15 involving similar farm worker's rights claims.  It also appears from the record that

16 these attorneys have diligently prosecuted this case to date and are knowledgeable

17 about the law applicable to the class claims.  *See* Fed. R. Civ. P. 23(g).  Given that

18 Defendants have not objected to counsel's qualifications to serve as class counsel,

19 the Court will appoint Ms. Smith, Ms. Isley and Mr. Morrison as class counsel.

20 ///

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 26

**B. Rule 23(b)(3) Requirements**

Having concluded that Plaintiffs have satisfied the prerequisites for class certification identified above, the Court must now determine whether certification is proper under Rule 23(b). Plaintiffs has sought certification of a so-called "damages class" pursuant to Rule 23(b)(3). Before certifying such a class, a court must find that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

1. *Do Common Questions of Law or Fact Predominate?*

As discussed above, the class claims for failure to obtain a farm labor contractor's license and failure to provide written disclosures present common questions of law and fact. For purposes of Rule 23(b)(3), the relevant inquiry is whether these common questions *predominate* over individualized questions. *See Wolin*, 617 F.3d at 1172 ("While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate."). Although Rule 23(a)(2) and Rule 23(b)(3) both address commonality, "the 23(b)(3) test is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by

1   representation.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-

2   24 (1997)).

3       The Court finds that questions common to the class claims predominate over

4   individualized questions.  Defendants' only objection to the class claims for failure

5   to obtain a farm labor contractor's license and failure to provide written disclosures

6   is that these claims do not predominate over the named class representatives'

7   *individual* claims.  *See* ECF No. 121 at 47 (arguing that "the predominance of *non-*

8   *class claims*" is a valid basis for declining to certify a class) (emphasis added).

9   ECF No. 121 at 47 (emphasis added).  The Court finds no support for this position.

10      Rule 23(b)(3) refers to questions "common to class members"

11  predominating over questions "affecting only individual members" of the class.

12  Fed. R. Civ. P. 23(b)(3).  The Court does not read this language to permit inquiry

13  into individual questions arising from *non-class* claims.  Rather, the Court reads

14  the rule to require a comparison of common and individual questions arising from

15  the claims being pursued on a *class-wide basis* only.  This interpretation is

16  consistent with the purpose of Rule 23(b)(3) itself, which is to determine whether

17  class treatment of claims which satisfy Rule 23(a) is preferable to individualized

18  adjudication.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th

19  Cir. 2001) ("Implicit in the satisfaction of the predominance test is the notion that

20

1   the adjudication of common issues will help achieve judicial economy.").

2   Accordingly, Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement.

3       2.  *Is Class Adjudication Superior to Individual Actions?*

4       In considering whether class adjudication is superior to separate individual

5   actions, a court must determine "whether the objectives of the particular class

6   action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at

7   1023.  In making this determination, the court must consider, *inter alia*, (1) the

8   interests of individual class members in pursuing their claims separately; (2) the

9   extent of any existing litigation concerning the same subject-matter; (3) the

10  desirability of concentrating the litigation in a particular forum; and (4) the

11  feasibility of managing the case as a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

12  A court's consideration of these factors must "focus on the efficiency and economy

13  elements of the class action so that cases allowed under subdivision (b)(3) are

14  those that can be adjudicated most profitably on a representative basis."  *Zinser*,

15  253 F.3d at 1190 (quotation and citation omitted).  In other words, the court must

16  perform "a comparative evaluation of alternative mechanisms of dispute

17  resolution."  *Hanlon*, 150 F.3d at 1023.

18      In this case, a balancing of the Rule 23(b)(3) factors weighs strongly in favor

19  of adjudication on a class-wide basis.  First, it does not appear that members of the

20  proposed class have a significant interest in litigating their claims separately.

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 29

Because the value of each individual class member's claims for statutory damages is relatively small, the cost of pursuing these claims individually would likely exceed the value of any potential recovery.  *See Zinser*, 253 F.3d at 1191 (noting that certification is generally proper when class members will be "unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure").

Further, it does not appear that there is any other pending litigation concerning the same subject-matter between Defendants and members of the proposed class.  Thus, the interests of judicial economy favor proceeding on a class-wide basis.  *See Zinser*, 253 F.3d at 1191 (observing that class-wide adjudication can promote judicial economy by "reducing the possibility of multiple lawsuits" when no other actions are currently pending).  Similarly, it appears that the Eastern District of Washington is an appropriate and convenient form, as all of the events giving rise to the class claims occurred within this district.

Finally, there do not appear to be any major impediments to managing this case as a class action.  Given that the parties have not suggested any such impediments with respect to the class claims for failure to obtain a farm labor contractor's license and failure to provide written disclosures, the Court finds that these can be resolved most efficiently at the same time and in the same proceeding. ///

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 30

## II. Motion to Strike

Defendants have moved to strike the supplemental declarations of Plaintiffs' attorneys Lori Isley and Andrea Schmitt (ECF Nos. 130 and 131) on the ground that Ms. Isley and Ms. Schmitt are not competent to offer testimony concerning the named class representatives' ability to fairly and adequately represent the interests of the class under Rule 23(a)(4).  Having reviewed the relevant portions of Ms. Isley's and Ms. Schmitt's supplemental declarations, the Court finds the testimony offered to be inadmissible.  Although counsel may testify about their *own* ability to fairly and adequately represent the interests of the class as attorneys, they may not testify about the qualifications of the named plaintiffs to serve as class representatives.  Paragraphs 5-8 of Ms. Isley's supplemental declaration (ECF No. 130), and paragraphs 4-5 and 7-8 of Ms. Schmitt's supplemental declaration (ECF No. 131), are hereby stricken.  The Court has not considered this evidence in conjunction with its rulings above.

Defendants have also moved to strike portions of declarations submitted by several putative class members on hearsay grounds.  Because the statements to which Defendants object pertain exclusively to claims which have not been certified, there is no need to determine their admissibility.  The motion is denied as moot as it pertains to these declarations.

///

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendants' Motion to Expedite (ECF No. 148) is **GRANTED**.

2.  Defendants' Motion to Strike (ECF No. 147) is **GRANTED in part**. Paragraphs 5-8 of the Supplemental Declaration of Lori Isley (ECF No. 130), and paragraphs 4-5 and 7-8 of the Supplemental Declaration of Andrea Schmitt (ECF No. 131), are hereby **STRICKEN**.  The motion is **DENIED as moot** as it pertains to declarations submitted by putative class members.

3.  Plaintiffs' Motion for Class Certification (ECF No. 57) is **GRANTED** as to the class claims for (1) failure to obtain a farm labor contractor's license; and (2) failure to provide written disclosures concerning terms and conditions of employment.  The motion is **DENIED** as to claims for making false or misleading representations and unlawful intimidation.

4.  The Court certifies the following class pursuant to Rule 23(b)(3) and Rule 23(c)(5):

> All farm workers who worked for NW Management
> Services in the orchards known as Alexander I, Alexander II
> and Independence during the years 2009, 2010 and 2011.

5.  Lori Isley, Joachim Morrison and Andrea Schmitt of Columbia Legal Services are appointed as class counsel pursuant to Rule 23(g).

6. The Court designates named Plaintiffs Abelardo Saucedo, Felipe Acevedo Mendoza and Jose Villa Mendoza as class representatives.

7. Within ten (10) days from the date of this Order, class counsel shall serve and file a proposed "Notice" to members of the certified class. This "Notice" shall comply with the requirements of Rule 23(c)(2)(B).

8. Defendants shall have ten (10) days from service of the proposed "Notice" to serve and file any objections to the same.

9. Class counsel shall have five (5) days from service of any objection to serve and file a reply to the same.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** February 27, 2013.



THOMAS O. RICE
United States District Judge

ORDER ON MOTION FOR CLASS CERTIFICATION ~ 33