UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ABELARDO SAUCEDO, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>NW MANAGEMENT AND REALTY SERVICES, INC., et al.,<br><br>            Defendants. | NO: 12-CV-0478-TOR<br><br>ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Joint Motion for Partial Summary Judgment (ECF No. 114). This matter was heard with oral argument on April 12, 2013. Andrea J. Schmitt and Lori A. Isley telephonically appeared on behalf of the Plaintiffs. Sarah L. Wixon appeared on behalf of Defendant NW Management and Realty Services, Inc. John R. Nelson appeared on behalf of Defendants John Hancock Life & Health Insurance, Co., John Hancock Life Insurance Company, and Texas Municipal Plans Consortium, LLC. Leslie R. Weatherhead appeared on

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

behalf of Defendant Farmland Management Services. The Court has reviewed the briefing and files herein and is fully informed.

## BACKGROUND

This motion for summary judgment presents a single question of law: Is Defendant NW Management, as an "agricultural employer" which is paid to perform "farm labor contracting activity" as those terms are defined in the FLCA, excused from registering as a "farm labor contractor" pursuant to RCW 19.30.020? For the reasons discussed below, the Court answers this question in the negative.

## FACTS

Defendants John Hancock Life & Health Insurance, Co., John Hancock Life Insurance Company, and Texas Municipal Plans Consortium, LLC (collectively "John Hancock"), own fruit orchards known as Alexander and Independence located in Yakima County, Washington. At all times relevant to this lawsuit, John Hancock leased these orchards to Defendant Farmland Management Services ("Farmland") under a Master Lease and Management Agreement ("Master Lease"). ECF Nos. 127-1, 127-2.[1]

---

[1] The Alexander and Independence orchards are actually leased to Farmland under two separate lease agreements. The parties agree that the terms of both leases are identical in all material respects.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

In broad terms, the Master Lease calls for Farmland to operate and manage the Alexander and Independence orchards for John Hancock or, alternatively, to sublease the properties to a third-party operations and management company. ECF No. 127-1 at ¶ C. Regardless of which option it chooses, Farmland is required to forward all proceeds from the orchards (*i.e.*, revenue from the sale of produce) to John Hancock. In exchange for operating and managing the orchards, Farmland is paid a "management fee," which apparently varies according to the type of land being farmed and the type of fruit being produced.[2] ECF No. 127-1 at ¶ 4. All costs incurred by Farmland in the operation and management of the orchards, including labor costs, are reimbursed by John Hancock. ECF No. 127-1 at ¶¶ 4.1, 24.1.

At all times relevant to this lawsuit, Farmland subleased the Alexander and Independence orchards to Defendant NW Management and Realty Services ("NW Management") under an Orchard Management Agreement ("Sublease").[3] The

---

[2] The portion of the Master Lease specifying the fees to which Farmland was entitled has been heavily redacted. Accordingly, the Court cannot determine how much Farmland was actually paid for its services, but the amount is not particularly relevant.

[3] There are two separate subleases for the Alexander and Independence orchards. Again, the parties agree that these documents are identical in all material respects.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

terms of the Sublease provide that NW Management will "supervise, maintain, service, manage and operate the orchards" and use them "for the sole purpose of conducting a first-class agricultural operation." ECF No. 127-3 at ¶ 3. The details of how the orchards are to be operated and managed are largely left to NW Management's discretion.[4] All proceeds from NW Management's activities are to be forwarded to Farmland, with NW Management retaining a management fee of $150.00 per net acre per year. ECF No. 127-3 at ¶ 11.

Of particular importance to this case, the Sublease also calls for NW Management to "hire, employ, discharge and supervise the work of all employees and independent contractors performing labor and/or services on the Properties." ECF No. 127-3 at ¶ 3.A. Although the Sublease classifies these workers as employees of NW Management, *see* ECF No. 127-3 at ¶ 3.A, their wages are ultimately paid by Farmland. *See* Wyles Decl., ECF No. 117, at ¶ 11.5 ("[NW Management] send[s] a projected estimate of payroll expense to Farmland each month and Farmland wires sufficient funds to our bank account. We then utilize

---

[4] The Sublease does, however, require NW Management to submit a yearly "Farm Operating Plan" to Farmland and John Hancock detailing the proposed "farming and cultural practices to be utilized on each Property and the costs associated with those practices." ECF No. 127-3 at ¶ 4.B.1.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

the funds from our bank account to cover employee wages and related expenses[.]"). In sum, NW Management is responsible for supplying all expertise, equipment, materials and labor necessary to operate the orchards, for which Farmland reimburses NW Management 100 percent.

## DISCUSSION

Summary judgment may be granted under Rule 56(a) upon a showing by the moving party "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling on a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom,

in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Finally, the court may only consider evidence that would be admissible at trial. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

**A. NW Management is an "Agricultural Employer" Under the FLCA**

Defendants assert that NW Management qualifies as "agricultural employer" within the meaning of the FLCA. The Court agrees. Under the FLCA, the term "agricultural employer" is defined, in relevant part, as "any person engaged in agricultural activity, including the growing, producing, or harvesting of farm or nursery products." RCW 19.30.010(4).

There is no genuine dispute that NW Management is engaged in agricultural activity. NW Management has demonstrated that it is responsible for all aspects of the day-to-day farming operations at the Alexander and Independence orchards, including the growing and harvesting of apples. Plaintiffs have not disputed that NW Management is engaged in such activities. Accordingly, the Court finds that NW Management is an "agricultural employer" under RCW 19.30.010(4).

**B. NW Management is a "Farm Labor Contractor" Because it Engages in "Farm Labor Contracting Activity" for a "Fee"**

The FLCA defines "farm labor contracting activity" as the "recruiting, soliciting, employing, supplying, transporting, or hiring of agricultural employees."

RCW 19.30.010(3).  Here again, there is no genuine dispute that NW Management is engaged in such activity.  The company's president, Rob Wyles, proclaims that NW Management has exclusive authority over employment decisions and that it routinely hires and fires farm workers based upon seasonal needs.  Wyles Decl., ECF No. 117 at ¶¶ 10, 11.5, 23-25.  At a minimum, this activity constitutes the "hiring" and "employing" of agricultural employees under RCW 19.30.010(3).  Thus, NW Management is engaged in "farm labor contracting activity."

The Court also finds that NW Management engages in farm labor contracting activity "for a fee."  The term "fee" is defined as follows:

> Any money or other valuable consideration paid or promised to be paid for services rendered or to be rendered by a farm labor contractor [or]
>
> Any valuable consideration received or to be received by a farm labor contractor *for or in connection with any [farm labor contracting activity]*, and shall include the difference between any amount received or to be received by him, and the amount paid out by him for or in connection with the rendering of such services.

RCW 19.30.010(7)(a), (b) (emphasis added).  Once again, it is undisputed that NW Management receives valuable consideration in the form of a "management fee" in exchange for its services.  It is further undisputed that NW Management's services include the hiring and firing of farm laborers.  Thus, NW Management is engaged in farm labor contracting activity "for a fee."  As a result, NW Management qualifies as a "farm labor contractor" pursuant to RCW 19.30.010(2).

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

## C. Agricultural Employers who Engage in Farm Labor Contracting Activity For a Fee Must Register Under the FLCA

The central issue in this case is whether NW Management must register as a farm labor contractor under the FLCA. Resolution of this issue hinges on whether NW Management is a "farm labor contractor" within the meaning of RCW 19.30.010(2). *See* RCW 19.30.020 (requiring any person acting as a "farm labor contractor" to obtain a license from the Department of Labor and Industries). As discussed above, a straightforward application of RCW 19.30.010(2) demonstrates that NW Management is a farm labor contractor because it engages in farm labor contracting activity for a fee. Nevertheless, Defendants maintain that the definitions of "farm labor contractor" and "agricultural employer" are mutually exclusive, and that, as a result, anyone who meets the latter definition is categorically exempt from registering under the FLCA.

This argument is unpersuasive for three reasons. First, the definitions of "agricultural employer" and "farm labor contractor" are *not* mutually exclusive under the FLCA. Unlike the federal Agricultural Workers Protection Act ("AWPA"), the FLCA does not specifically exclude "agricultural employers" from the definition of "farm labor contractor." *Compare* RCW 19.30.010(2) ("'Farm labor contractor' means any person, or his or her agent or subcontractor, who, for a fee, performs any farm labor contracting activity."), *with* 29 U.S.C. § 1802(7)

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

("The term 'farm labor contractor' means any person, *other than an agricultural employer* . . . who, for any money or other valuable consideration . . . performs any farm labor contracting activity.") (emphasis added). Thus, the plain language of the state statute suggests that a person may qualify as both an "agricultural employer" *and* a "farm labor contractor."

Contrary to Defendants' assertions, the fact that the FLCA "makes a specific and clear distinction" between agricultural employers and farm labor contractors does not mean that only the latter may be regulated. The AWPA also draws a clear distinction between agricultural employers and farm labor contractors, but, as noted above, it does so in a way that unmistakably precludes an agricultural employer from also qualifying as a "farm labor contractor" when it engages in farm labor contracting activity. *See* 29 U.S.C. § 1802(7) ("The term 'farm labor contractor' means any person, other than an agricultural employer . . ."). As if to further emphasize the point, the AWPA expressly incorporates the definition of "farm labor contracting activity" into the definition of "agricultural employer." *See* 29 U.S.C. § 1802(6) ("The term 'farm labor contracting activity' means <u>recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker</u>.") (emphasis added); 29 U.S.C. § 1802(2) ("The term 'agricultural employer' means any person who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery, or who produces

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

or conditions seed, and who either <u>recruits, solicits, hires, employs, furnishes, or transports any migrant or seasonal agricultural worker</u>.") (emphasis added).  Thus, under the plain language of the AWPA, an agricultural employer who engages in farm labor contracting activity *cannot* also be a farm labor contractor.  Under the plain language of the FLCA, by contrast, an agricultural employer who engages in paid farm labor contracting activity *is* also a farm labor contractor.

Second, the FLCA does not specifically exempt "agricultural employers" from being regulated.  Unlike the AWPA—which plainly states that it "does not apply to any agricultural employer," 29 U.S.C. § 1803(b)—the FLCA contains no "blanket" exemption in favor of agricultural employers.  Rather, the only exemption found in the FLCA is the so-called "single-employer" exemption, which applies to persons who perform farm labor contracting activity *on behalf of* a single agricultural employer.  Specifically, the FLCA provides:

> This chapter shall not apply to . . . any person who performs any of the services enumerated in subsection (3) of this section [i.e., the "recruiting, soliciting, employing, supplying, transporting, or hiring [of] agricultural employees"] *only within the scope of his or her regular employment for one agricultural employer on whose behalf he or she is so acting*, unless he or she is receiving a commission or fee, which commission or fee is determined by the number of workers recruited[.]

RCW 19.30.010(6) (emphasis added).

Defendants suggest that this exemption would be rendered meaningless if agricultural employers were required to register under the FLCA.  In their view, no

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

one performing farm labor contracting activity exclusively for one agricultural employer could ever qualify for the exemption if the agricultural employer itself was required to register as a farm labor contractor.  Once again, the plain language of the statute does not support Defendants' position.

Under the plain language of the FLCA, not *all* agricultural employers are required to register as farm labor contractors.  Instead, only those agricultural employers who engage in farm labor contracting activity—and who do so for a fee—are required to register.  The fee requirement is crucial: when applied to agricultural employers, it distinguishes between (1) those who employ agricultural employees to engage in agricultural activity *on their own behalf* (*e.g.*, farm owners); and (2) those who employ agricultural employees to engage in agricultural activity *on behalf of a paying third party* (*e.g.*, employers who are paid to farm another's land).

Applied to the single-employer exemption, the fee requirement illustrates that agricultural employers who hire and employ farm workers on behalf of a paying third party are beyond the scope of the exemption.  These employers necessarily qualify as farm labor contractors under RCW 19.30.010(2) by virtue of being paid (*i.e.*, receiving a "fee") to supply farm labor and other agricultural services.  Conversely, agricultural employers who hire and employ farm workers on their own behalf can fall within the scope of the exemption.  Any person who

engages in farm labor contracting activity "only within the scope of his or her regular employment" for such an employer will qualify for the single-employer exemption unless he or she receives a commission or fee based on the number of workers recruited. RCW 19.30.010(6). Accordingly, requiring certain agricultural employers to register as farm labor contractors does not render the single-employer exemption meaningless for this group.

Finally, assuming for the sake of argument that the statute is ambiguous as to whether agricultural employers are exempt from regulation, its legislative history resolves the ambiguity. As Plaintiffs correctly note, the single-employer exemption in RCW 19.30.010(6) appears to have been modeled after a similar provision of the AWPA's predecessor statute, the Farm Labor Contractor Registration Act ("FLCRA"). The FLCRA's single-employer exemption applied to "any farmer . . . who personally engages in any [labor contracting] activity for the purpose of supplying migrant workers solely for his own operation." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 944 (9th Cir. 1986) (quoting 7 U.S.C. § 2042(b)(2)) (alteration in original).

Notably, Congress abolished the FLCRA's single-employer exemption in 1983. As the Ninth Circuit explained in *Mendoza*, Congress took this action in response to judicial decisions which it viewed as having construed the exemption

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12

too narrowly—*i.e.*, to require registration by virtually anyone who hired migrant workers to farm someone else's land:

> The purpose of the registration provision[s] in both the [AWPA] and [the FLCRA] was to [regulate] traditional "crew leaders" or "crew pushers" who recruited crews of migrant and seasonal workers and moved them from job to job.  Although these "crew leaders" or "crew pushers" were regarded as the primary offenders against migrant and seasonal workers, they were "usually transient, and hard to find . . . and even harder to locate and control."  These considerations did not apply to farmers and processors who were permanently located, tied to their farm or processing plant, and thus easily found and held accountable. *Id.*  Yet the [FLCRA] had been interpreted and enforced to require farmers, processors and other fixed situs employers of migrant and seasonal workers to register [as farm labor contractors].  Congress regarded the application of the registration requirement to such persons as "redundant and unnecessary" and sought to end it by . . . exempting "agricultural employers" from registration.

783 F.2d at 944 (citations to legislative materials omitted).  In light of this history, the *Mendoza* court characterized the AWPA as an "extension of the exemption" to those who operate or manage a farm on behalf of the landowner. *Id.*

Unlike Congress, the Washington Legislature has never abolished the single-employer exemption in favor of a "blanket" exemption for all agricultural employers.  Given that the Legislature amended the FLCA in 1985, some two years after Congress abolished the federal single-employer exemption, it is reasonable to infer that the Legislature considered—and expressly rejected—amending the FLCA to exempt all agricultural employers from regulation. *See Perez-Farias*, 175 Wash.2d at 530 ("Based upon the differences between the

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13

AWPA and the FLCA, we conclude that [the Washington] legislature intended to provide farm workers protections greater than those provided under the federal scheme.") (footnote omitted).  Accordingly, the Court concludes that agricultural employers must register as farm labor contractors under the FLCA to the extent that they engage in farm labor contracting activity for a fee.  Defendants' motion for summary judgment is denied.

## CONCLUSION

The plain language of the FLCA, as well as its legislative history, indicate that NW Management must register as a farm labor contractor.  NW Management is admittedly an "agricultural employer" within the meaning of RCW 19.30.010(4).  However, it also engages in "farm labor contracting activity" as that term is defined in RCW 19.30.010(3).  Because it performs that service "for a fee," NW Management also qualifies as a "farm labor contractor" under RCW 19.30.010(2) and must register as such pursuant to RCW 19.30.020.

The FLCA's definitions of "agricultural employer" and "farm labor contractor" are not mutually exclusive, and the statute does not expressly exclude agricultural employers from regulation.  This strongly suggests that agricultural employers must register when they engage in farm labor contracting activity for a fee.  To the extent that the FLCA's text leaves any room for debate, the statute's legislative history, when compared to that of the AWPA, defeats the Defendants'

arguments. At bottom, there is simply no basis for exempting agricultural employers from registering under the FLCA.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Joint Motion for Partial Summary Judgment (ECF No. 114) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** April 12, 2013.

THOMAS O. RICE
United States District Judge