UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ABELARDO SAUCEDO, et al.,<br><br>               Plaintiffs,<br><br>   v.<br><br>NW MANAGEMENT AND REALTY SERVICES, INC., et al.,<br><br>               Defendants. | NO: 12-CV-0478-TOR<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

     BEFORE THE COURT is Plaintiffs' Motion for Partial Summary Judgment (ECF No. 183). This matter was heard with telephonic oral argument on June 6, 2013. Andrea J. Schmitt and Lori A. Isley appeared on behalf of the Plaintiffs. Brendan V. Monahan appeared on behalf of Defendant NW Management and Realty Services, Inc. John R. Nelson appeared on behalf of Defendants John Hancock Life & Health Insurance, Co., John Hancock Life Insurance Company, and Texas Municipal Plans Consortium, LLC. Leslie R. Weatherhead appeared on

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

behalf of Defendant Farmland Management Services.  The Court has reviewed the briefing and files herein and is fully informed.

## BACKGROUND

Plaintiffs have moved for partial summary judgment on the following issues: (1) whether NW Management was required to register as a farm labor contractor under the Washington Farm Labor Contractors Act ("FLCA"); (2) whether NW Management violated the FLCA by failing to register as a farm labor contractor and failing to provide farm workers with required disclosures; and (3) if so, whether John Hancock and Farmland are jointly and severally liable for the violations pursuant to RCW 19.30.200.

## FACTS

The facts relevant to the instant motion are set forth in detail in the Court's April 12, 2013 Order Denying Defendants' Motion for Summary Judgment (ECF No. 186), which facts are incorporated herein by reference.  Briefly, Defendants John Hancock Life & Health Insurance, Co., John Hancock Life Insurance Company, and Texas Municipal Plans Consortium, LLC (collectively "John Hancock"), own fruit orchards known as Alexander and Independence in Yakima County, Washington.  John Hancock leases the orchards to Defendant Farmland Management Services ("Farmland"), which in turn subleases the orchards to Defendant NW Management and Realty Services ("NW Management").

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

While styled as "leases" and "subleases," the contracts between these Defendants are more akin to commercial property management agreements. Specifically, these contracts call for Farmland or a designated third party (in this case, NW Management) to "supervise, maintain, service, manage and operate" "and use the orchard Properties [sic] for the sole purpose of conducting a first-class agricultural operation." ECF No. 127-3 at 2 (preamble and section 3). Farmland and NW Management are obligated to "hire, employ, discharge and supervise" laborers to farm the orchards (*id*. at section 3A), though all labor costs are borne directly by John Hancock. The leases call for Farmland to establish one bank account for each farm it operated or managed for purpose of paying hired labor. ECF No. 127-1 at section 24.1 (designated as "Farm Payroll Accounts"). The funds in these accounts came from separate "Disbursement Accounts," which were owned by and funded from "advances made by [John Hancock]." ECF No. 127-1 at sections 24.2 and 24.3. Even though John Hancock advanced all labor costs, the employees were not considered John Hancock employees. *Id*. at section 30; ECF No. 127-3 at section 3A (NW Management considered "employer of record"). For their services, Farmland and NW Management receive a "management fee" (ECF No. 127-1 at Ex. B; ECF No. 127-3 at section 11), while John Hancock owns all the real property, equipment and the crops and therefore is entitled to all "proceeds from the sale of any crops grown" (ECF No. 127-1 at sections 3 (rent and proceeds

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

from sale of any crops) and 24B (Farmland to deposit all cash received into John Hancock deposit account); ECF No. 127-3 at section 12 (NW Management to comply with Farmland's instructions regarding sale of crops)).

## DISCUSSION

Summary judgment may be granted under Rule 56(a) upon a showing by the moving party "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling on a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372,

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

378 (2007). Finally, the court may only consider evidence that would be admissible at trial. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

## A. Defendant NW Management was Required to Register as a Farm Labor Contractor

The first issue on which Plaintiffs have sought partial summary judgment is a familiar one: whether NW Management was required to register as a farm labor contractor under the FLCA. The Court previously answered this question in the affirmative in its April 12, 2013 Order Denying Defendants' Motion for Partial Summary Judgment (ECF No. 186). For the reasons set forth in that Order, the Court finds that NW Management is a "farm labor contractor," that it engages in "farm labor contracting activity," and that it does so "for a fee," as those terms are defined in RCW 19.30.010. ECF No. 186 at 6-7. As such, NW Management was required to register as a farm labor contractor pursuant to RCW 19.30.020. The fact that NW Management also meets the statutory definition of "agricultural employer" is irrelevant; given that it was paid by a third party to "recruit," "employ" and "supply" farm laborers, *see* RCW 19.30.010(3), it was required to register. ECF No. 186 at 8-14. For this same reason and the reasons previously articulated, the single-employer exemption set forth in RCW 19.30.010(6) does not

apply. ECF No. 186 at 11.[1]  Accordingly, Plaintiffs are entitled to partial summary judgment on this issue.

### B. Defendant NW Management Violated the FLCA

Plaintiffs assert that NW Management violated the FLCA by (1) failing to register as a farm labor contractor; and (2) failing to provide farm workers with written disclosures concerning the terms and conditions of their employment as required by RCW 19.30.110(7).  NW Management has admitted that it neither registered as a farm labor contractor nor provided workers with written disclosures from 2009 to 2011.  *See* Def.'s Answer to Pls.' Am. Compl., ECF No. 90 at ¶¶ 41, 46).  The only disputed issue is whether NW Management was *required* to do so by virtue of being a "farm labor contractor."

As noted above, the Court has found that NW Management was, in fact, a farm labor contractor by virtue of engaging in farm labor contracting activity for a fee.  As such, NW Management was required to register with the Department of Labor and Industries, *see* RCW 19.30.020, and to provide farm workers with

---

[1] Moreover, during the time period in question, Farmland did not perform these services for a single agricultural employer, i.e., Farmland.  It was not until 2012 that it began custom farming services solely for Farmland.  *See* ECF No. 117 at 3 (Declaration of Wyles).

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

written disclosures containing, *inter alia*, the amount of compensation to be paid, the term of employment, the benefits offered, the place of employment, and the name and address of the owner of the property, *see* RCW 19.30.110(7).  Because it did not do so, Plaintiffs are entitled to summary judgment on this issue.

### C. Defendants John Hancock and Farmland are Jointly and Severally Liable for NW Management's Violations of the FLCA

The final issue on which Plaintiffs seek partial summary judgment is whether John Hancock and Farmland can be held jointly and severally liable for NW Management's violations of the FLCA.  Resolution of this issue hinges on (1) whether John Hancock and Farmland "used" NW Management's services, and (2) whether they did so "knowingly" within the meaning of RCW 19.30.200.  If the answer to these questions is yes, John Hancock and Farmland are liable along with NW Management by virtue of "knowingly us[ing] the services of an unlicensed farm labor contractor."  RCW 19.30.200.

   1. <u>John Hancock and Farmland "Used" NW Management's Services</u>

Defendants maintain that there are genuine issues of material fact as to whether John Hancock and Farmland "used" NW Management's services.  The Court disagrees.  The record clearly illustrates that John Hancock leased the Alexander and Independence orchards to Farmland with the understanding that Farmland would either farm the orchards itself or sublease them to a third party to

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

be farmed by *that* party.  With John Hancock's express approval, Farmland subleased the orchards to NW Management to "supervise, maintain, service, manage and operate," and to use "for the sole purpose of conducting a first-class agricultural operation." ECF No. 127-3 at section 3.  The terms of the sublease also call for NW Management to "hire, employ, discharge and supervise the work of all employees and independent contractors performing labor and/or services on the Properties."  ECF No. 127-3 at section 3A.

This arrangement amounts to "use" of NW Management's services by John Hancock and Farmland for three reasons.  First, virtually all proceeds from the sale of fruit grown at the orchards flow directly to John Hancock.  While Farmland and NW Management may retain or deduct small portions as their respective "management fees" (apparently as an accounting convenience), the fruit is owned by and sold for the benefit of John Hancock.  As Plaintiffs correctly note, John Hancock is not simply a "passive investor" in another entity's farming operation.  Rather, John Hancock *is* the farming operation, and it employs Farmland and NW Management to maximize its profits.

Second, and in a related vein, John Hancock maintains a substantial degree of control over Farmland and NW Management.  The lease between John Hancock and Farmland requires Farmland to submit a detailed "Farm Budget" and "Farm Operating Plan" on a yearly basis for John Hancock's review and approval.  ECF

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

No. 127-1 at section 19 (Financial Records and Reports).  Where, as in the cases of the Alexander and Independence orchards, Farmland enters into a sublease with a third party, it must obtain a detailed budget and operating plan from the sublessee, incorporate the sublessee's budget and operating plan into its own "Farm Budget" and "Farm Operating Plan," and submit the entire package to John Hancock for approval.  ECF No. 127-1 at section 19.2E.  Again, this is not an arrangement under which John Hancock merely owns the land and leases it to others to do with it as they see fit.  Rather, John Hancock actively engages other entities such as Farmland and NW Management to manage and farm its land and sell its crops.  This amounts to "use" of NW Management's services by John Hancock (and, by extension, Farmland) under any common-sense meaning of the term.

    Finally, and perhaps most tellingly, John Hancock paid for all labor performed at the Alexander and Independence orchards.  Although farm workers were technically paid by NW Management, all funds in the payroll account were supplied in advance by John Hancock to Farmland, which in turn supplied the funds to NW Management.  In short, farm labor was a line-item expense which was funded and paid by John Hancock.  *Supplying* this labor was one of the services for which NW Management, received a "management fee."  And while this was by no means the only service for which NW Management was paid, it was a crucial component of its agreement with Farmland (and, by extension,

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

Farmland's agreement with John Hancock). For obvious reasons, had NW Management chosen not to hire farm laborers to farm the orchards, the entire operation would have come to a grinding halt. Once again, there can be little question that John Hancock (and, by extension, Farmland) "used" NW Management to recruit, solicit, employ, supply and/or hire farm laborers. *See* RCW 19.30.010(3). Plaintiffs are entitled to summary judgment on this issue.

### 2. John Hancock and Farmland "Knowingly" Used NW Management's Services

The Court previously addressed the issue of whether John Hancock and Farmland "knowingly" used NW Management's services at length in its December 3, 2012 Order Denying Defendants' Motion to Dismiss (ECF No. 64). There, the Court ruled that the FLCA imposes an affirmative duty upon anyone who hires a farm labor contractor to verify that the contractor is properly licensed. ECF No. 64 at 13-18. The plain language of RCW 19.30.200 requires those persons to make a "determination" as to whether a particular contractor is licensed. In making that determination, they "may rely upon either the license issued by the director to the farm labor contractor under RCW 19.30.030 or the director's representation that such contractor is licensed as required by this chapter." RCW 19.30.200. This "determination" requirement cannot be squared with Defendants' argument that *actual knowledge* is a prerequisite to liability.

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

Moreover, equating "knowing use" with "actual knowledge" would give users of farm labor contractors a perverse incentive to remain deliberately ignorant of a contractor's licensure status. Such a result would be plainly inconsistent with the FLCA's remedial purpose, which is to protect farm laborers from abuse at the hands of farm labor contractors. *See Perez-Farias v. Global Horizons, Inc.*, 175 Wash.2d 518, 521 (2012). In sum, the statute's plain language and legislative history illustrate that users of farm labor contractors are required to investigate whether a contractor is licensed with the Department of Labor and Industries. It is undisputed that John Hancock and Farmland failed to establish they had done so in either of the ways specified in the statute (*i.e.*, being furnished with a copy of the actual license or obtaining confirmation of licensure from the Department of Labor and Industries). Accordingly, John Hancock and Farmland are jointly and severally liable for NW Management's violations of the FLCA. RCW 19.30.200.

**IT IS HEREBY ORDERED:**

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 183) is **GRANTED**. The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** June 17, 2013.

*Thomas O. Rice*
THOMAS O. RICE
United States District Judge

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11